# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

### No. ACM 40651

———————————

### UNITED STATES
*Appellee*

**v.**

### Brennen J. PATTERSON
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 2 February 2026

———————————

*Military Judge*: Jacquelyn M. Christilles.

*Sentence*: Sentence adjudged 2 May 2024 by GCM convened at Joint Base San Antonio – Fort Sam Houston, Texas. Sentence entered by military judge on 24 July 2024: Bad-conduct discharge, confinement for 3 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Lieutenant Colonel Allen S. Abrams, USAF; Major Heather M. Bruha, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Captain Heather R. Bezold, USAF; Mary Ellen Payne, Esquire.

Before GRUEN, PERCLE, and MORGAN, *Appellate Military Judges*.

Judge MORGAN delivered the opinion of the court, in which Senior Judge GRUEN and Judge PERCLE joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MORGAN, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas and pursuant to a plea agreement, of one specification of the non-capital incorporated offense of 8 U.S.C. § 1324, illegal transportation of an alien within the United States, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for three months, forfeiture of all pay and allowances, and reduction to the grade of E-1.[2] The convening authority took no action on the findings, but suspended the adjudged forfeitures for two months from entry of judgment, at which time, unless the suspension was sooner vacated, the suspended forfeitures were to be remitted without further action; and waived all automatic forfeitures "for a period of two months, or release from confinement, or expiration of term of service, whichever is sooner, with the waiver commencing on 16 May 2024." Additionally, the total pay and allowances were directed to be paid for the benefit of Appellant's dependent.

Appellant raises seven issues on appeal: (1) whether the trial court lacked subject-matter jurisdiction; (2) whether the specification to which Appellant pleaded guilty failed to state an offense; (3) whether the military judge abused her discretion in accepting Appellant's plea of guilty to a knowing *mens rea*; (4) whether Appellant's plea of guilty was improvident "as a whole;"[3] (5) whether trial defense counsel were ineffective in advising on the maximum punishment; (6) whether the application of 18 U.S.C. § 922 to Appellant warrants

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*).

[2] The plea agreement required the military judge impose a bad-conduct discharge and authorized a range of confinement from a minimum of two months to a maximum of six months. Consistent with the plea agreement, two additional offenses—conspiracy to commit the charged violation of 8 U.S.C. § 1324, in violation of Article 81, UCMJ, 10 U.S.C. § 881; and carrying a handgun while engaged in criminal activity, in violation of the Texas Penal Code § 46.02, as assimilated under Article 134, UCMJ—were withdrawn and dismissed with prejudice to attach upon completion of appellate review.

[3] This issue raised by Appellant's counsel avers Appellant's plea of guilty was improvident due to a lack of mental responsibility and because of an erroneous maximum punishment. We address these two claims separately in this opinion.

appropriate relief; and (7) whether Appellant's sanity board was incorrectly conducted.[4]

We have thoroughly examined issue (6) and find Appellant is not entitled to relief. *See United States v. Lepore*, 81 M.J. 759, 763 (A.F. Ct. Crim. App. 2021) (en banc) (holding a Court of Criminal Appeals lacks the authority to direct modification of the 18 U.S.C. § 922(g) prohibition noted on the staff judge advocate's indorsement); *see also United States v. Johnson*, 86 M.J. 8, No. 24-0004, 2025 CAAF LEXIS 499, at *13–14 (C.A.A.F. 24 Jun. 2025) (holding Courts of Criminal Appeals lack "authority to modify the [18 U.S.C.] § 922 indication" in the entry of judgment); *United States v. Vanzant*, 84 M.J. 671, 681 (A.F. Ct. Crim. App. 2024) (concluding "[t]he firearms prohibition remains a collateral consequence of the conviction, rather than an element of findings or sentence, and is therefore beyond our authority to review"), *aff'd*, __ M.J.__, No. 24-0182/AF, 2025 CAAF LEXIS 830 (C.A.A.F. 1 Oct. 2025).

We have carefully considered issue (7) and find it does not require discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

As to issue (4), we find the military judge erred by miscalculating the maximum confinement period based upon facts neither properly pleaded nor proved. However, we are convinced Appellant's guilty plea was not predicated upon a substantial misunderstanding of the maximum punishment as to render his guilty plea improvident.

With respect to issue (3), we find the military judge did not abuse her discretion by accepting Appellant's plea to the offense of illegal transportation of an alien because she made clear during the plea inquiry that Appellant pleaded to "reckless disregard" for the status of the individual he transported. Appellant did not sufficiently plead guilty to "knowingly" transporting an alien and the record reflects the military judge acknowledged Appellant was not pleading so. As such, we find the military judge should have excepted the language regarding "knowing" transportation of an alien because "knowing" and "reckless disregard" are separate theories of liability. Thus, we take appropriate remedial action in our decretal paragraph by excepting the language "with knowledge of, or."

As to Appellant's remaining issues, we find no error that materially prejudiced his substantial rights.

---

[4] Appellant personally raises issue (7) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

Appellant frequented night clubs two to three nights a week in San Antonio, Texas. One night, on or about 6 June 2023, at a San Antonio bar, Appellant met a man named MV, also known as (aka) KP, aka "the Unicorn." MV offered to pay Appellant to pick up and transport unnamed individuals at some later time. The following week, MV messaged Appellant, requested Appellant transport two to three people and sent a pin drop[5] to a pickup location in Zavala County, Texas. The next day, Appellant drove more than two hours to the directed location he described as "in the middle of nowhere" whereupon his arrival he honked his horn and eight individuals "came out of the bushes" and entered his vehicle. Appellant disregarded instructions from MV to place some of the individuals into his trunk and permitted all eight individuals to enter his four-passenger vehicle. MV regularly texted Appellant during the ensuing drive, advising Appellant to go the speed limit, not "look sus," and to keep reminding his passengers to "stay down."

Appellant was pulled over by a Dimmit County Sheriff's Deputy who observed Appellant following too closely behind a tractor. The Sheriff's Deputy also noticed that the passengers in the vehicle were lying on top of each other in the backseat, constituting seatbelt violations. When Appellant relayed to MV that he was being stopped, MV messaged, "Let em run if so." As Appellant pulled over, the eight individuals fled his vehicle into the brush. Only BTF, a Mexican National in the country illegally, and the single individual with whom Appellant was charged with transporting, was apprehended by law enforcement officers. Appellant was detained and he admitted to law enforcement that he was transporting the individuals for a fee of $1,500.00 per person. Following Appellant's consent to search the vehicle, the Sheriff's Deputy seized a loaded handgun on the floorboard under the driver's seat. Appellant was charged with, *inter alia*, illegal transportation of an alien within the United States, in violation of 8 U.S.C. § 1324.

As part of a plea agreement, Appellant agreed to plead guilty to transporting BTF within the United States by means of a passenger vehicle, with knowledge of, or in reckless disregard of the fact that BTF was an alien who entered the United States in violation of 8 U.S.C. § 1324, a non-capital offense, in violation of Article 134, UCMJ (Specification 1 of Charge II). The remaining specifications and charge would be withdrawn and dismissed without prejudice, "after such time as the military judge announces a sentence and before the court-martial adjourns;" the prejudice would not attach "until the completion of appellate review." During the plea inquiry, the military judge explained

---

[5] A "pin drop" is a spot on a digital map marked by a virtual pin icon to indicate geographic coordinates.

the elements of 8 U.S.C. § 1324 to Appellant, to include that Appellant "knew or recklessly disregarded the fact that the said [BTF] was an alien who entered the United States in violation of law." Appellant acknowledged he understood.

Appellant then explained to the military judge during his guilty plea inquiry that on 12 June 2023 he traveled from San Antonio, Texas, to Zavala County, Texas, "in [his] personal vehicle" where he "picked up a person [he] later found out to be named [BTF]." He elaborated, "I learned later that [BTF] was an alien who entered the United States in violation of the law" and that "prior to picking up [BTF] I did not know he was an alien who entered the United States in violation of the law." However, as he arrived at the pickup location, Appellant "became suspicious that [he] had gotten wrapped up into something illegal" and suspected BTF "was an undocumented immigrant." He described the location as "in the middle of nowhere," near the "Mexican border." When he honked his horn, eight individuals who he did not expect to see "came out of the bushes." Appellant observed BTF's clothes were dirty, he was Latino, and he spoke only Spanish. Appellant described the scene:

> And I was told over text that I needed to hurry and get all those people into my car and drive away quickly. All of this seemed not right to me. I felt extremely scared and I felt time was moving very fast. I felt like I was on autopilot at the time. I chose not to ask questions and just do what I was instructed to do. I knew in that moment I had gotten myself involved into something illegal. I just did not fully understand what it all meant. I agree that a reasonable person would have known [BTF] was an alien who entered the United States in violation of the law. Also I agree that a reasonable person under the circumstances would have done more to determine whether [BTF] was an alien who entered the United States in violation of law.

Seeking admissions to the elements of Specification 1 of Charge II, the military judge asked, "Do you admit that you *recklessly disregarded* the fact that the said [BTF] was an alien who entered the United States in violation of law," to which Appellant responded, "Yes, Your Honor." (Emphasis added).

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Appellant argues for the first time on appeal that Specification 1 of Charge II, alleging illegal transporting of an alien within the United States, in violation of 8 U.S.C. § 1324, under clause 3 of Article 134, UCMJ, was not properly charged because it does not contain language that the transportation was "in

furtherance of such violation of law," and therefore the court-martial lacked subject matter jurisdiction. We disagree.

As an initial matter, we note the similarities between the offense and issues presented in this case with those in our superior court's recent opinion in *United States v. Cook*, 86 M.J. 104, No. 24-0221, 2025 CAAF LEXIS 726 (C.A.A.F. 28 Aug. 2025). In both cases, the appellants were charged with violating clause 3 of Article 134, UCMJ, for illegally transporting aliens, as 8 U.S.C. § 1324 is not an enumerated UCMJ offense.

"Alien" is a term utilized under 8 U.S.C. § 1324(a)(1)(A)(i)–(iv). The term "alien" is defined under 8 U.S.C. § 1101(a)(3) as "any person not a citizen or national of the United States."

Section 1324(a)(1)(A)(ii) of Title 8 punishes one who:

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, *in furtherance of such violation of law*[.]

8 U.S.C. § 1324(a)(1)(A)(ii) (emphasis added).

The specification at issue in *Cook* alleged the appellant:

> did, within the State of Arizona, on or about 22 August 2021, transport [MFL], [ONA], [POM], [TMV], and [ONC] within the United States by means of [a] passenger vehicle, knowing or in reckless disregard that they were aliens that entered the United States in violation of the law, in violation of 8 United States Code § 1324, an offense not capital.

2025 CAAF LEXIS 726, at*4 (alterations in original).

The specification at issue in the present case alleges Appellant:

> did, within the State of Texas, on or about 12 June 2023, transport [BTF], within the United States by means of passenger vehicle, with knowledge of, or in reckless disregard of the fact that the said [BTF] was an alien who entered the United States in violation of law, in violation of 8 United States Code § 1324, an offense not capital.

In neither case did the Government include in its specification the above emphasized statutory language, "in furtherance of such violation of law." While the United States Court of Appeals for the Armed Forces (CAAF) noted in *Cook* it declined to review whether a specification's omission of a § 1324 element under clause 3 of Article 134, UCMJ, failed to properly allege a violation, it did

state, "To the extent that [an a]ppellant claims that the omission of an element is jurisdictional, we rejected this position in *United States v. Humphries*, 71 M.J. 209, 212–14 (C.A.A.F. 2012)." 2025 CAAF LEXIS 726, at *9 n.5.

We therefore conclude in this case that the omission of the "in furtherance of such violation of law" language contained in United States Code § 1324 offense, assimilated under clause 3 of Article 134, UCMJ, does not present a jurisdictional defect.[6] Consequently, we confine our analysis to whether the specification properly states an offense.

## B. Failure to State an Offense

Appellant argues, for the first time on appeal, that even if subject matter jurisdiction is established, Specification 1 of Charge II nonetheless fails to state an offense in the absence of the "in furtherance of such violation of law*"* language. The Government counters that Appellant's unconditional guilty plea waived the issue. Alternatively, the Government argues the omitted language was necessarily implied and Appellant cannot demonstrate prejudice to a substantial right. For the reasons set forth below we conclude on these facts the specification sufficiently states an offense, and Appellant suffered no material prejudice.

### 1. Additional Background

Before trial, the military judge, via email, solicited the views of counsel as to the elements and definitions applicable to 8 U.S.C. § 1324(a)(1)(A)(ii), and provided the parties with the electronic link to the applicable pattern jury instructions from the United States Court of Appeals for the Ninth Circuit (Ninth Circuit).[7] Those instructions provide the Government must prove each of the following elements beyond a reasonable doubt:

> First, [*name of alien*] was an alien;
>
> Second, [*name of alien*] was not lawfully in the United States;
>
> Third, the defendant [knew] [acted in reckless disregard of the

---

[6] *See also United States v. Cotton*, 535 U.S. 625, 630 (2002) (holding "a defective indictment does not deprive a court of jurisdiction").

[7] The military judge provided the following link: https://www.ce9.uscourts.gov/jury-instructions/node/912. *See ¶ 7.2, Alien—Illegal Transportation or Attempted Transportation (8 U.S.C. § 1324(a)(1)(A)(ii))*, NINTH CIRCUIT MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS, https://www.ce9.uscourts.gov/jury-instructions/node/912 (last visited 26 Jan. 2026).

fact] that [*name of alien*] was not lawfully in the United States; [and]

Fourth, the defendant knowingly [[transported or moved] [attempted to transport or move]] [*name of alien*] to help [him] [her] remain in the United States illegally . . . .

NINTH CIRCUIT MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS, ¶ 7.2, *Alien—Illegal Transportation or Attempted Transportation (8 U.S.C. § 1324(a)(1)(A)(ii))* (2022 ed.).

Trial defense counsel initially advocated for use of the pattern jury instructions from the United States Court of Appeals for the Tenth Circuit (Tenth Circuit), arguing the "in furtherance" element was better captured and stating:

Specifically, our client has agreed to plead guilty that (1) the alien entered the US unlawfully, (2) that he had a reckless disregard for the fact that the alien was not lawfully in the US, (3) that he transported the alien within the US intending to help him remain in the US illegally *in furtherance of the alien's violation of law*.

(Emphasis added).

After the Government concurred with the military judge that the Ninth Circuit's jury instructions were "most helpful" and "appropriate," trial defense counsel relayed to the military judge, "After reviewing the [Third Circuit,[8] Ninth Circuit, Tenth Circuit], and the elements used in *Cook*, . . . my read is they all capture the same elements and that *any differences are merely semantics*." (Emphasis added).

At trial, the military judge summarized the above email communications, had them marked as an appellate exhibit, and asked if either counsel "wish to add anything to [the] discussions concerning the elements other than that contained in the email traffic," to which trial defense counsel replied, "No, Your Honor."

Consistent with the agreed upon Ninth Circuit pattern jury instructions, the military judge explained the elements to Appellant as follows:

[O]ne, that on or about 12 June 2023 within the state of Texas you transported the [BTF] within the United States by means of passenger vehicle.

---

[8] United States Court of Appeals for the Third Circuit.

Two, that the [BTF] was an alien who entered the United States in violation of law.

Three, that you knew or recklessly disregarded the fact that the said [BTF] was an alien who entered the United States in violation of law.

Four, that you transported the BTF into the United States intending to help them [sic] remain in the United States illegally in furtherance of the [BTF's] violation of law.

And five, that such conduct was in violation of 8 United States [C]ode 1324, an offense noncapital.

The military judge then advised Appellant that "'in furtherance of' means furthering, advancing, or helping forward." Appellant affirmatively stated he understood the explained elements and definitions and admitted the elements and definitions taken together correctly described what he did.

**2. Law**

Whether a specification fails to state an offense is a question of law this court reviews de novo. *United States v. Turner*, 79 M.J. 401, 404 (C.A.A.F. 2020) (citation omitted).

"A specification is a plain, concise, and definite statement of the essential facts constituting the offense charged. A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication; however, specifications under Article 134[, UCMJ,] must expressly allege the terminal element[,]" such as being prejudicial to good order and discipline, service discrediting, or a crime or offense not capital. Rule for Courts-Martial (R.C.M.) 307(c)(3).[9] This requirement is meant to "give the accused notice" of the charges he must defend and "protect him against double jeopardy." *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994) (citing R.C.M. 307(c)(3) (1984)) (additional citation omitted). "As a general rule, crimes and offenses not capital, as defined by Federal statutes, may be properly tried as offenses under

---

[9] *See also MCM*, pt. IV, ¶ 91.c.(6)(b), *Specifications under clause 3*:

> When alleging a clause 3 violation, each element of the federal statute (including, in the case of a prosecution under 18 U.S.C. § 13, each element of the assimilated State, Territory, Possession, or District law) must be alleged expressly or by necessary implication, and the specification must expressly allege that the conduct was "an offense not capital." In addition, any applicable statutes should be identified in the specification.

clause (3) of Article 134." *United States v. Perkins*, 47 C.M.R. 259, 263 (A.F.C.M.R. 1973).

Our superior court determined "a charge that is defective because it fails to allege an element of an offense, if not raised at trial, is tested for plain error." *United States v. Ballan*, 71 M.J. 28, 34 (C.A.A.F. 2012) (footnote omitted) (citing *United States v. Cotton*, 535 U.S. 625, 631–32 (2002)) (additional citations omitted). "In the context of a plain error analysis, Appellant has the burden of demonstrating: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused." *Id.* at 34 n.6 (citation omitted). In *Ballan*, the Appellant plead guilty to an Article 134, UCMJ, offense which omitted the terminal element, entered into a pretrial agreement, submitted a stipulation of fact which addressed the terminal element, indicated he understood the nature of the prohibited conduct during the providence inquiry, and explained why his acts were service discrediting. *Id.* at 30–35. In upholding the plea, the CAAF emphasized the protections afforded a servicemember within the military justice system's guilty plea procedures observing the process, "ensures that an appellant has notice of the offense of which he may be convicted and all elements thereof before his plea is accepted and, moreover, protects him against double jeopardy." *Id.* at 35 (citations omitted).

Additionally, a specification is viewed with "maximum liberality" when attacked for the first time on appeal. *Turner*, 79 M.J. at 403 (citation omitted). This means that challenges after trial "will be viewed with 'greater tolerance' and . . . . 'liberally construed' in favor of validity." *Id.* at 405 (alteration in original and footnote omitted). A reviewing court may consider the entire record of trial in deciding whether a specification as alleged necessarily implied all the essential elements. *See United States v. Hamilton*, 82 M.J. 530, 534 (A. Ct. Crim. App. 2022) (holding they "are not only confined to the text of the specification," but "next look to the record to see if the specification's wording . . . necessarily implied [the elements of the offense and] therefore gave appellant sufficient notice of the offense he must defend himself against").

Further, "when a failure to state an offense claim is 'first raised after trial,' the claim will fail 'absent a clear showing of substantial prejudice to the accused—such as a showing that the indictment is 'so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had.'" *Turner*, 79 M.J. at 406 (citation omitted).

In the context of a defective specification, the prejudice analysis "demand[s] close review of the trial record." *Humphries*, 71 M.J. at 215. Further, "we look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially

uncontroverted.'" *Id.* at 215–16 (quoting *Cotton*, 535 U.S. at 633, then citing *Johnson v. United States*, 520 U.S. 461, 470 (1997)).

### 3. Analysis

Viewing the specification at issue with "maximum liberality," we conclude illegality was sufficiently alleged and Appellant had sufficient notice of the offense. First, the language of the specification expressly alleged that the conduct was an offense not capital and specifically identified the applicable assimilated statute—*i.e.*, 8 U.S.C. § 1324, *Bringing in and harboring certain aliens*. It is also a reasonable construction Appellant was charged with *furthering* BTF's violation of law when, pursuant to MV's, aka "the Unicorn's," instructions, Appellant retrieved BTF in the desert, near the Mexican border, on the day of the charged offense for a fee of $1,500.00 per person. There is nothing in the specification that would indicate the transportation occurred in a context that would make it lawful.

However, in resolving this issue we are not bound only by the language of the specification. Examining the entire record of trial, we conclude the alleged missing element ("in furtherance of") was uncontroverted and Appellant was on notice of the offense with which he was charged. Before trial commenced, the military judge sought the views of counsel as to the elements and definitions specifically applicable to 8 U.S.C. § 1324(a)(1)(A)(ii). The fourth listed element of those proposed instructions provided "the defendant knowingly [[transported or moved] [attempted to transport or move]] [*name of alien*] to help [him] [her] remain in the United States illegally[.]" Transporting an alien to "help him remain" in the country illegally put Appellant on adequate notice his actions were "in furtherance of" the alien's violation of law. Trial defense counsel even advanced an alternate pattern instruction he believed "better captured" the "in furtherance" element, averring his client agreed to plead guilty that (1) BTF entered the United States unlawfully, (2) that Appellant had a reckless disregard for the fact that BTF was not lawfully in the United States, and (3) that Appellant transported the alien within the United States intending to help BTF remain in the United States illegally *in furtherance of BTF's violation of law*. However, trial defense counsel ultimately agreed with the proposed instructions, after reviewing instructions from various federal circuits, as well as case law, stating, "[T]hey all capture the same elements and that any differences are merely semantics." Further to those exchanges, when the military judge asked counsel on the record whether they wished to add anything to their "discussions concerning the elements other than that contained in the email traffic," trial defense counsel replied, "No, Your Honor."

The record as a whole clearly indicates Appellant was on notice of the assimilated offense, its elements, and what he needed to defend against. The record is devoid of any misapprehension on Appellant's part as to the misconduct

alleged and to which he pleaded guilty. In fact, the record is replete with references by the parties both before and during trial to the alleged missing element. The military judge defined the element to Appellant, who understood and provided a detailed factual basis in support of the element during his plea inquiry.

Even if this conclusion is susceptible to debate and it was obvious error, we find no substantial prejudice. In *Ballan*, the CAAF observed, "[T]he real question is whether we will find prejudice and disturb the providence of a plea where the providence inquiry clearly delineates each element of the offense and shows that the appellant understood 'to what offense and under what legal theory [he was] pleading guilty.'" 71 M.J. at 34 (second alteration in original) (citation and footnote omitted).

During the providence inquiry in this case, Appellant explained to the military judge, with respect to "element four" that he "underst[ood] that by taking [BTF] to the pickup location - - to the drop off location that [he] was helping him go from a place closer to the border to a place further away from the border. [BTF] is not my friend or family member." He also explained his purpose in transporting BTF "was bringing him from the pickup location to somewhere closer to the drop off location, more inland" and agreed he did it for personal financial gain. When the military judge inquired whether he admitted he "transported [BTF] within the United States intending to help him remain in the United States illegally in furtherance of the above [BTF's] violation of law," Appellant responded, "Yes, Your Honor."[10]

As in *Ballan*, Appellant entered into a plea agreement, submitted a stipulation of fact which addressed the omitted element, engaged in a thorough providence inquiry where the elements were clearly explained to him and wherein he stated he understood the "in furtherance of" element, and adequately explained factually why his acts satisfied that element. Appellant's trial defense counsel also demonstrated a thorough knowledge of the governing law.

We therefore have no reason to conclude that if the Government added the words, "in furtherance of such violation of law," Appellant would not have pleaded guilty; that the result of the court-martial would have been different;

---

[10] *See United States v. Barajas-Chavez*, 162 F.3d 1285, 1288 (10th Cir. 1999) (concluding the "in furtherance of" language requires that defendant's transportation or movement of the alien will help, advance, or promote the alien's illegal entry or continued illegal presence in the United States).

or that Appellant would have been afforded additional double jeopardy protection.

## C. Providence of Guilty Plea Regarding Knowing *Mens Rea*

### 1. Additional Background

The parties agree on appeal that Appellant testified he "did not know [BTF] was an alien who entered the United States in violation of the law" before picking him up. Appellant argues the military judge abused her discretion by eliciting mere conclusions as to Appellant's knowledge of BTF's illegal status and this court should except and set aside the words, "with knowledge," from Specification 1 of Charge II, and leave in place only the reckless disregard *mens rea* element. The Government counters that Appellant's plea satisfies both forms of *mens rea* (knowing and reckless disregard) and invites this court to find Appellant's "deliberate avoidance" satisfies the "knowing" element. While we decline the Government's invitation, we do hold Appellant's plea to reckless disregard of the fact that BTF was an alien who entered the United States in violation of the law was provident.

The military judge instructed Appellant that "'[r]eckless disregard' means deliberate indifference to facts which, if considered and weighed in a reasonable manner, indicate the highest probability that the alleged alien was in fact an alien and was in the United States unlawfully."[11]

During the guilty plea inquiry, the Appellant told the military judge:

> As to element three, prior to picking up [BTF], I did not know he was an alien who entered the United States in violation of the law; however, as I approached the location I was told to drive to − − and when to drive − − as I approached the location I was told to drive to and when I arrived at the pickup location I became suspicious that I had gotten wrapped up into something illegal.

---

[11] This formulation generally tracks with the definition of "Recklessly" in The Model Penal Code (MPC):

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

MODEL PENAL CODE § 2.02(2)(c) (Official Draft and Revised Comments 1985).

Appellant further explained to the military judge that "a reasonable person would have known [BTF] was an alien who entered the United States in violation of the law." He also agreed "that a reasonable person under the circumstances would have done more to determine whether [BTF] was an alien who entered the United States in violation of law."

Later, the military judge inquired, "Do you admit that you recklessly disregarded the fact that the said [BTF] was an alien who entered the United States in violation of law," to which, Appellant responded, "Yes, Your Honor."

After the military judge accepted and deemed Appellant's plea provident, trial defense counsel sought clarification as to the *mens rea* for which Appellant was found guilty, stating:

> Your Honor, my apologies, we just – – we want to clarify for the record based on the *[C]are*[12] inquiry and the colloquy that we had with regard to the finding of guilt. Since Specification 1 of Charge II has a disjunctive *mens rea*, our request would be that the court finds by exceptions finds [Appellant] guilty with respect to the reckless disregard and by exception with knowledge of – – of which. And our position for that, Your Honor, to make it clear for the appellate record, that [Appellant] is not being found guilty for an offense which he did not ultimately plead guilty . . . .

In a subsequent Article 39(a), UCMJ, 10 U.S.C. § 839(a), session the military judge summarized the R.C.M. 802 session that took place following the Defense's request for clarification:

> The accused pled guilty to Specification 1 of Charge II as charged on the charge sheet and to the plea agreement where he agreed to plead guilty to Specification 1 of Charge II as charged. As such, I would not find by exceptions and substitutions. Defense['s] concern was that the charge reads with knowledge of or in reckless disregard of the fact. Defense counsel was concerned that there might be some confusion. However, I believe the record is clear. Especially based on the accused's *[C]are* inquiry where he indicated that he did not know [BTF] was an alien but rather a reasonable person should have known based on circumstances including that [BTF] did not speak English, he was of Latino descent, he was dirty, and that he entered [Appellant's]

---

[12] *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

car when he honked his horn. He came out of a bush and entered the car.

Again, in his unsworn statement, Appellant told the military judge, "I began to drive and follow his instructions. Truthfully, I wasn't nervous or stressed on the drive down because I hadn't realized there was anything wrong with what I was doing."

**2. Law**

### *a. Providency Generally*

Acceptance of a guilty plea is reviewed for an abuse of discretion, and questions of law arising from the plea are reviewed de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

"A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea -- an area in which we afford significant deference." *Id.* (citation omitted). "The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted).

We apply a "substantial basis" test by determining "whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Inabinette*, 66 M.J. at 322. An appellant bears the "burden to demonstrate a substantial basis in law and fact for questioning the plea." *United States v. Finch*, 73 M.J. 144, 148 (C.A.A.F. 2014) (quoting *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004)); *see also United States v. Phillips*, 74 M.J. 20, 21–22 (C.A.A.F. 2015) (citing *Finch*).

The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (citation omitted).

"[W]hen a plea of guilty is attacked for the first time on appeal, the facts will be viewed in the light most favorable to the [G]overnment." *United States v. Arnold*, 40 M.J. 744, 745 (A.F.C.M.R. 1994) (citation omitted). "This court must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Hines*, 73 M.J. at 124 (internal quotation marks and citation omitted).

Military judges often can "resolve" apparent inconsistencies by asking the accused questions and receiving answers that show no actual inconsistency exists. *See, e.g.*, *Hines*, 73 M.J. at 124–25. In *United States v. Saul*, the CAAF held the military judge abused his discretion by accepting a guilty plea for

willful destruction of property when the appellant made substantially conflicting statements as to his willfulness during the providence inquiry, stating, "If an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." 86 M.J. 30, 33 (C.A.A.F. 2025) (citing *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996)) (quoting Article 45(a), UCMJ, 10 U.S.C. § 845(a))).

### b. Mens Rea

We find the recent United States Supreme Court decision in *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023), instructive as a beginning point. Interpreting the scienter standards under the False Claims Act,[13] the Court held "'actual knowledge' refers to whether a person is 'aware of' information'" about the claim's falsity. *Id.* at 751 (citations omitted). "[D]eliberate ignorance" instead "encompasses defendants who are aware of a substantial risk that their statements are false, but intentionally avoid taking steps to confirm the statement's truth or falsity." *Id.* (citations omitted). And "'reckless disregard' similarly captures defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." *Id.* (citations omitted).

### c. Deliberate Ignorance

In describing the "deliberate ignorance" instruction, the CAAF explained "the evidence must allow a rational juror to conclude 'beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.'" *United States v. Brown*, 50 M.J. 262, 266 (C.A.A.F. 1999) (citing *United States v. Adeniji*, 31 F3d 58, 62 (2d Cir. 1994) (quoting *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993)).

In *United States v. Adams*, the CAAF held:

> knowledge may be inferred from evidence of deliberate avoidance in all Article 86, UCMJ, offenses. This knowledge requirement may be satisfied where evidence meeting the standard in *Brown* establishes that the accused was subjectively aware of a high probability of the existence of illegal conduct, and purposely contrived to avoid learning of the illegal conduct.

63 M.J. 223, 226 (C.A.A.F. 2006) (*citing Brown*, 50 M.J. at 266). In *Adams*, the military judge asked the accused whether he knew he was required to be present at the time and place alleged in the specification. *Id.* at 224. The accused answered that he did not know the time and place of his duty because he had

---

[13] 31 U.S.C. § 3729(a).

deliberately avoided finding out this information. *Id.*[14] Finding the plea provident, the CAAF held "deliberate avoidance can create the same criminal liability as actual knowledge for all Article 86, UCMJ, offenses." *Id.* at 226. As later observed by the CAAF in *Saul*, "[t]he Court in *Adams* did not fail to reconcile an express statement that the accused did not know the time and place of his duty with an inference that he did know the time and place of his duty." 86 M.J. at 35.

### d. Reckless Disregard

"Reckless disregard" is not defined in Title 8 of the United States Code, but the Ninth Circuit has observed "reckless disregard" includes both an objective prong and a subjective prong. *United States v. Rodriguez*, 880 F.3d 1151, 1161 (9th Cir. 2018) ("[A] correct definition of 'reckless disregard,' consistent with Supreme Court and Ninth Circuit law, would include 'the defendant's disregard of a risk of harm of which the defendant is aware.'" (alterations in original omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))).

In *United States v. Gifford*, the CAAF held "recklessness" *mens rea* would adequately separate wrongful conduct from otherwise innocent with respect to providing alcohol to individuals under 21 years of age and phrased the standard as "*consciously* disregarding the *known* risk that those individuals are under twenty-one." 75 M.J. 140, 147 (C.A.A.F. 2016).

With respect to transporting aliens in cases involving violations of 8 U.S.C. § 1324(a)(1)(A)(ii), the United States Court of Appeals for the Eleventh Circuit

---

[14] The following colloquy occurred in *Adams*:

> [Military Judge (MJ)]: Now, did you know that you were required to be present at this appointed time and place of duty?
>
> [Adams]: I did not know, sir; and I didn't find out during the day. I deliberately avoided my duties, sir.
>
> MJ: You deliberately avoided finding out where you were supposed to be at 0630 on 7 February 2001?
>
> [Adams]: Yes, sir.
>
> . . . .
>
> MJ: Now, how did you deliberately avoid finding out where the rest of your unit was located?
>
> [Adams]: I stayed in my room, sir, instead of, like, trying to find anyone from my platoon or squad or asking the duty if they would have known the whereabouts.

63 M.J. at 224–25 (omission in original).

approved the following definition of reckless disregard: "to be aware of, but consciously and carelessly ignore, *facts and circumstances* clearly indicating that the person transported was an alien who had entered or remained in the United States in violation of law." *See United States v. Perez*, 443 F.3d 772, 781 (11th Cir. 2006).

### e. Alternative Means of Liability

The words "knowing" and "in reckless disregard" in 8 U.S.C. § 1324 are separated by the disjunctive "or." As explained by the CAAF in *United States v. Sager*, "[i]n ordinary use the word 'or' . . . marks an alternative which generally corresponds to the word 'either.'" 76 M.J. 158, 161 (C.A.A.F. 2017) (omission in original) (citing Earl T. Crawford, *The Construction of Statutes* § 188 (1940)) (additional citation omitted).

"With minor exceptions for capital cases, a 'court-martial panel, like a civilian jury, returns a general verdict and does not specify how the law applies to the facts, nor does the panel otherwise explain the reasons for its decision to convict or acquit.'" *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007) (quoting *United States v. Hardy*, 46 M.J. 67, 73 (C.A.A.F. 1997)).

"A factfinder may enter a general verdict of guilt even when the charge could have been committed by two or more means, as long as the evidence supports at least one of the means beyond a reasonable doubt." *Id*. (citing *United States. Griffin*, 502 U.S. 46, 49–51 (1991)) (additional citation omitted).

Further, "[i]t makes no difference how many members chose one act or the other, one theory of liability or the other. The only condition is that there be evidence sufficient to justify a finding of guilty on any theory of liability submitted to the members." *United States v. Rodriguez*, 66 M.J. 201, 205 (C.A.A.F. 2008) (quoting *Brown*, 65 M.J. at 359).

### 3. Analysis

For the reasons stated below, we hold there is not a substantial basis in law and fact to question the providency of Appellant's plea to the offense of transporting BTF "with knowledge of, or in reckless disregard" of BTF's alien status.

Per the CAAF, deliberate ignorance means "the accused was subjectively aware of a high probability of the existence of illegal conduct, and purposely contrived to avoid learning of the illegal conduct." *Adams*, 63 M.J. at 226 (citing *Brown*, 50 M.J. at 266). As cited above, there are various formulations of

"reckless disregard."[15] In advising Appellant of the applicable definitions in this case, the military judge only defined the terms "alien," "reckless disregard," and "in furtherance of" (as discussed *supra*). We find the military's judge's definition, not objected to by either party, of "reckless disregard," to wit: "deliberate indifference to facts which, if considered and weighed in a reasonable manner, indicate the highest probability that the alleged alien was in fact an alien and was in the United States unlawfully," adequately captured both the subjective requirement that an accused be aware of the risk his conduct created, and the objective standard measuring the nature and degree of the risk disregarded.

We also find Appellant's plea to "reckless disregard" of BTF's status was provident under the military judge's formulation of "reckless disregard." The nature and degree of the facts and circumstances articulated in Appellant's guilty plea inquiry sufficiently indicate that BTF was in the United States illegally. Appellant stated that "prior to picking up [BTF, he] did not know [BTF] was an alien who entered the United States in violation of the law." However, as he arrived at the pickup location, he "became suspicious that [he] had gotten wrapped up into something illegal" and "highly suspect[ed] that [BTF] was an undocumented immigrant." He described the location as "near the Mexican Border . . . in the middle of nowhere." When he honked his horn, eight individuals "came out of the bushes" he did not expect to see. Appellant observed BTF's clothes were dirty, he was Latino, and spoke only Spanish. He elaborated, "All of this seemed not right to me. I felt extremely scared and I felt time was moving very fast."

We find these facts sufficiently established Appellant recklessly disregarded (either consciously, carelessly, or indifferently) BTF's illegal status. He stipulated that he admitted to civilian law enforcement he was transporting individuals for $1,500.00 per person. Appellant also told the military judge, he "chose not to ask questions and just do what [he] was instructed to do" [by the "Unicorn"]. While he knew in that moment he got himself "involved into something illegal," Appellant added he did "not fully understand what it all meant." He further added, "a reasonable person would have known [BTF] was an alien

---

[15] *See, e.g.*, "disregard of a risk of harm of which the defendant is aware" (*Rodriguez* (Ninth Circuit)), "to be aware of, but consciously and carelessly ignore, facts and circumstances clearly indicating that the person transported was an alien" (*Perez*), "a conscious disregard of a substantial and unjustifiable risk that a material element exists or will result from a person's conduct" (MPC), and "defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway" (*SuperValu*). This is no doubt not an exhaustive list of formulations.

who entered the United States in violation of the law," and that "a reasonable person under the circumstances would have done more to determine whether [BTF] was an alien who entered the United States in violation of law."

However, we cannot find Appellant criminally culpable under a deliberate ignorance theory of knowledge under the standard articulated in *Adams,* 63 M.J. 223. In *Adams*, though the accused stated he did not know the time and place of his duty, the military judge additionally elicited admissions that he "deliberately avoided" finding out this information by staying in his room. In this case, Appellant and his counsel disavowed Appellant transported BTF "knowing" his illegal status, yet the military judge did not reconcile Appellant's professed lack of knowledge of BTF's status by seeking admissions from Appellant that he purposely avoided doing so. As in *Saul,* we cannot infer a theory of knowledge that directly conflicts with Appellant's disavowals, at least without clearing up the conflict. On the one hand, the military judge in the case before us refused the Defense's request to except the actual knowledge language, while simultaneously ruling the "record is clear;" Appellant "indicated that *he did not know [BTF] was an alien* but rather a reasonable person should have known based on circumstances." (Emphasis added).

Even if we were to adopt the Government's position on appeal that there was an adequate factual basis to support a deliberate ignorance theory of knowledge, that theory was never advanced by the Government or the subject of the providence inquiry. The military judge nowhere defined the terms "knowledge" or "deliberate ignorance" (or any variation of the concept). On the contrary, the record discloses trial defense counsel's protestations to a finding of "knowing" transportation. Additionally, the military judge only sought an admission from Appellant as to recklessness, *i.e.*, "Do you admit that you recklessly disregarded the fact that the said [BTF] was an alien who entered the United States in violation of law?" Therefore, since the theory urged upon us on appeal was absent at trial, we decline to uphold it now.

As stated, "knowing" and "recklessly disregarding" an alien's status are two possible means of possessing the statutory *mens rea* to commit the charged offense, conviction of which may be upheld if *either* means is supported by evidence beyond a reasonable doubt. We are convinced Appellant's plea to recklessness is provident. We are also guided by the CAAF's recent holding in *Cook* (*supra*) that this court did not err in conducting its factual sufficiency review of a conviction for illegally transporting aliens in violation of the same statute at issue here charged in the same disjunctive fashion. 2025 CAAF LEXIS 726,

at *18 (citation omitted).[16] We therefore do not find the military judge abused her discretion by accepting Appellant's guilty plea.[17]

We must, however, also be satisfied the plea is correct in law and fact. Article 66(d), UCMJ, 10 U.S.C. § 866(d). In this regard, we are not asked to review a general verdict masking the theory of liability upon which the factfinder convicted. Here, the military judge eliminated the "knowing" theory as unsupported by the evidence, which would seemingly constrain us from finding that theory of guilt correct in law and fact. However, as this is one of two alternative means of committing the offense, we are satisfied all elements of the offense are supported by Appellant's plea and find the conviction correct in fact and law.

To summarize, we need not decide today whether the *mens rea* element of "knowing" could be satisfied by a plea under a deliberate ignorance theory, nor establish with precision the boundary in the relationship between deliberate ignorance and recklessness, other than observe there is one and that different levels of culpability exist between the deliberately ignorant accused and the reckless accused. In this case, deliberate ignorance was neither advanced as a theory of criminal liability by the Government, nor its applicability to the facts of this case discussed by the military judge. The concept was not defined, nor did the military judge explain the standard to, or seek admissions from, Appellant under that theory. Notably, the military judge did not reconcile Appellant's disavowals of knowledge of BTF's illegal status; however, the military judge did not abuse her discretion because Appellant's plea satisfies the *mens rea* of reckless disregard of the fact that BTF was an alien who entered the United States in violation of the law. We therefore except the words "with knowledge of, or" from Specification 1 of Charge II, and set them aside, and affirm the findings of guilty to the remaining language in this specification. In considering the *Winckelmann* factors, we reassess the sentence to be the same as adjudged since the offense to which Appellant pleaded guilty still stands. *See United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013) (citations omitted.)

---

[16] Likewise, this court determined the charge and specification in *Cook* was legally sufficient. *See United States v. Cook*, No. ACM 40333, 2024 CCA LEXIS 276, at *35–38 (A.F. Ct. Crim. App. 3 Jul. 2024) (unpub. op.), *aff'd*, 86 M.J. 104 (C.A.A.F. 2025).

[17] We do not mean to suggest there is no requirement that a military judge adequately advise an accused of the various means by which an offense may be committed, explain the pertinent definitions, solicit an adequate factual basis, and resolve inconsistencies or disavowals before finding a plea provident.

**D. Providence of Appellant's Guilty Plea as to Mental Responsibility**

Appellant claims his plea was improvident because during the presentencing phase Appellant raised the possibility of a lack of mental responsibility defense not addressed by the military judge. We conclude the facts at trial did not reasonably raise a mental responsibility defense, nor undermine the presumption Appellant was legally competent to stand trial.

**1. Additional Background**

Prior to Appellant's court-martial, a sanity board convened, pursuant to R.C.M. 706, to address his mental state. The board determined that Appellant did not have a severe mental disease or defect at the time of the criminal conduct and was not suffering from a mental disease or defect such that rendered him unable to understand the nature of the proceedings or cooperate intelligently in his defense.

Before the guilty plea inquiry, the military judge summarized an R.C.M. 802 scheduling conference he conducted with the parties. The military judge asked, "Defense counsel as there was a prior [R.C.M.] 706 inquiry, do you have any concerns about the mental capacity of your client to participate in his defense," to which, trial defense counsel responded, "No, Your Honor, there are no concerns at this time."

As part of the plea agreement, Appellant entered into a stipulation of fact wherein, *inter alia*, he agreed that its stated facts were "true, correct and admissible for all purposes," to include that he was "at all times of his criminal conduct, able to appreciate the nature, quality and wrongfulness of all conduct herein stipulated."

At trial, the military judge, observing the stipulation of fact indicated an informal physical evaluation board determined Appellant suffered from depression and anxiety due to childhood trauma, inquired, "Defense [c]ounsel, do you have any concern about your client's ability, mental capacity to stand trial or his mental capacity to the nature of the offense," to which, trial defense counsel he responded, "No, Your Honor, we do not." The military judge also elicited the absence of any such concern from the Government. Appellant also submitted documentation of the findings and recommended disposition of the Air Force Physical Evaluation Board (PEB) recommending a Veterans Administration disability rating for major depressive disorder and anxiety disorder.

During the providence inquiry Appellant told the military judge he could have avoided permitting BTF to enter his vehicle, nobody forced him to transport BTF, and he had no legal reason to transport him. He affirmatively answered when the military judge asked if he was pleading guilty because he was in fact guilty of the offense to which he pleaded.

Discussing the conditions of the plea agreement, Appellant affirmed he understood he was waiving the opportunity to retain an expert consultant at government expense. His trial defense counsel stated, "[W]e waved [sic] the presence of a forensic psychologist." Additionally, Appellant did not identify lack of mental responsibility as a potential issue when discussing the plea agreement provision requiring he "waive all waivable motions."

During his unsworn statement, Appellant told the military judge that as a result of working years of night shifts, he developed insomnia and sleep apnea, which in turn, "impacted [his] anxiety and depression" triggering his "PTSD, making day-to-day life very difficult." He sought mental health treatment and had been on "[several variations of] antidepressants and mood stabilizers." He relayed he underwent a stressful medical examination board evaluation, his unit had not been supportive, and he went through a divorce and custody battle that "made it difficult to plan for the future." He stated at the time he was asked to make the pickup, his "mental health had been declining," and he "wasn't on [his] medication." He told the military judge, "[the weekend before the offense], I had been spiraling so badly and hadn't slept for nearly [two] days. I was not in a healthy mental state, although I was aware of my actions . . . ." He closed the providence inquiry by staying, "I understand and accept responsibility for my mistake last June, and I ask that you will give me the best chance to move forward with my life."

**2. Law**

Acceptance of a guilty plea is reviewed for an abuse of discretion, and questions of law arising from the plea are reviewed de novo. *Inabinette*, 66 M.J. at 322. A military judge must resolve any apparent inconsistency based upon an applicable affirmative defense prior to accepting the guilty plea. *See* Article 45(a), UCMJ, 10 U.S.C. § 845(a). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea;" failure to do so is an abuse of discretion. *United States v. Hayes*, 70 M.J. 454, 458 (C.A.A.F. 2012) (citation omitted). However, "[n]ot every mitigating statement or word requires further inquiry." *Id.* "[A] military judge is not required to reopen a plea and inquire further where an accused raises the 'mere possibility of a defense.'" *Id.* (citing *United States v. Shaw*, 64 M.J. 460, 462 (C.A.AF. 2007)).

An accused may not be tried by court-martial "if that person is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings against them or to conduct or cooperate intelligently in the defense of the case," R.C.M. 909(a). "[S]evere mental disease or defect" does not include "minor disorders such as nonpsychotic behavior disorders and personality defects." R.C.M. 706(c)(2)(A). Additionally, an accused's mental capacity to stand

trial is presumed unless the contrary is established by a preponderance of the evidence. R.C.M. 909(b), (e)(2). However,

> [s]hould the accused's statements or material in the record indicate a history of mental disease or defect on the part of the accused, the military judge must determine whether that information raises either a conflict with the plea and thus the possibility of a defense or only the "mere possibility" of conflict. . . . [I]t is prudent, but . . . not always required, to conduct further inquiry when a significant mental health issue is raised, regardless of whether a conflict has actually arisen.

*United States v. Riddle*, 67 M.J. 335, 338–39 (C.A.A.F. 2009) (citations omitted).

The affirmative defense of lack of mental responsibility requires the accused to prove by clear and convincing evidence (1) the accused suffered from a "severe mental disease or defect" at the time of the offense, and (2) as a result, the accused was "unable to appreciate" either the "nature and quality" of his acts or their "wrongfulness." Article 50a, UCMJ, 10 U.S.C. § 850a; *see also* R.C.M. 916(k)(3)(A) ("[An] accused is presumed to have been mentally responsible at the time of the alleged offense[,] . . . [u]ntil the accused establishes, by clear and convincing evidence, that he [ ] was not mentally responsible at the time of the alleged offense.").

### 3. Analysis

Appellant fails to carry his burden to demonstrate a substantial basis in law or fact to question his plea. *See Phillips*, 74 M.J. at 21–22. Considering the entirety of the evidence before the military judge, the facts and circumstances at most raised the "mere possibility" of lack of mental responsibility. This is insufficient for relief. *Hayes*, 70 M.J. at 459.

An accused is presumed mentally responsible. *See* R.C.M. 916(k)(3)(A). In this case, a pretrial sanity board inquiry, conducted pursuant to R.C.M. 706, concluded Appellant was able to appreciate the wrongfulness as well as the nature and quality of his conduct, and that he was not suffering from a mental disease or defect rendering him unable to understand the nature of the proceedings against him or to conduct or cooperate intelligently in his defense. When asked directly by the military judge whether there were any concerns regarding Appellant's mental capacity following the R.C.M. 706 board, trial defense counsel represented, "No, Your Honor, there are no concerns at this time."

The affirmative defense of lack of mental responsibility requires a showing by clear and convincing evidence that the accused is "unable to appreciate the nature and quality or the wrongfulness of his . . . acts." R.C.M. 916(k)(1).

Review of the record reflects Appellant was diagnosed with depression and anxiety from childhood trauma. The R.C.M. 706 board determined on 11 March 2024 that Appellant was able to appreciate the wrongfulness of his conduct, and that he was not suffering from a mental disease or defect rendering him unable to understand the nature of the proceedings. There was no effort on the part of trial defense counsel to contradict these findings, and every effort to assure the court-martial that Appellant did not have a lack of mental responsibility defense.

Appellant's unsworn declaration asserting generic references to his sleep issues and anxiety, and the PEB's disability rating for major depressive and anxiety disorder, did not raise any conflict with his guilty pleas requiring clarification. Significantly, Appellant and his counsel disavowed the existence of a defense of lack of mental responsibility or competence to stand trial. Under the circumstances, no further inquiry from the military judge was necessary to assure the providency of Appellant's guilty pleas.

Even assuming, *arguendo*, Appellant's generic reference in his unsworn statement to his depression, anxiety, and sleep problems and the PEB documentation rose to the level of a "severe mental disease or defect" at the time of the charged offenses, there was no information in the record that this condition rendered Appellant unable to appreciate "the nature and quality or the wrongfulness of [his] acts." Indeed, the R.C.M. 706 board found to the contrary. *See Riddle*, 67 M.J. at 339–40 (citing *Shaw*, 64 M.J. at 464) (where reference to a history of bipolar disorder "at most raised only the 'mere possibility' of a conflict with the plea," and therefore, "it was not an abuse of discretion for the military judge to accept [the appellant]'s plea without conducting further inquiry into his mental health"). No further inquiry is required for a "mere possibility" of mental irresponsibility from bipolar and borderline personality disorder, severe depression diagnosis, ongoing impatient psychiatric care, and two suicide attempts between offenses and court-martial. *See Shaw*, 64 M.J. at 464 (holding the military judge did not abuse his discretion in not conducting further inquiry where reference to history of bipolar disorder in unsworn statement raised only mere possibility of a conflict with the plea). Nor has Appellant to date offered any indication that his disorder raises a substantial question regarding his mental responsibility.

Under these circumstances, to include repeated disavowals of any defense of lack of mental responsibility, and the findings of the R.C.M. 706 board, Appellant's matters raised in sentencing were matters to consider as potential mitigating evidence, but did not provide a "substantial basis" to undermine the validity of his guilty plea. In fact, Appellant's comments in his unsworn statement reflect he understood his references to his mental health were matters to be taken into consideration as possible mitigation and not as a defense when

he caveated such comments by stating, "I was not in a healthy mental state, although I was aware of my actions," and concluded with, "I understand and accept responsibility for my mistake last June."

Wherefore, we find no substantial basis in law or fact for questioning the Appellant's plea as to his mental responsibility and find the military judge did not abuse her discretion in finding Appellant's plea provident for this reason.

## E. Maximum Punishment

### 1. Additional Background

At trial, the following exchange, between the military judge and the parties, transpired concerning the maximum sentence:

> [Military Judge (MJ)]: Trial Counsel, what do you calculate to be the maximum punishment authorized? And any minimum punishment required by the law in this case, based solely on the accused's guilty plea?

> [Assistant Trial Counsel (ATC)]: The maximum punishment authorized is a dishonorable discharge, total forfeitures, 10 years confinement and reduction to E-1. There is no minimum punishment required.

> MJ: Counsel, as I noted when we began our session today, we had a discussion during our initial [R.C.M.] 802 concerning the maximum punishment in this case. According to 8 USC 1324 an offense which is done for the purpose of commercial[ ] advantage, or financial gain under the [C]ode subjects individuals to imprisonment of not more than 10 years. I discussed with counsel that this specification as written on the charge sheet does not include that the conduct in this case was done for financial gain. However, counsel for both sides indicated that the accused was aware based on the evidence presented to him by the [G]overnment and the facts of this case that the conduct was done for financial gain and that the maximum confinement of 10 years was appropriate in this case. Counsel for the Government, did I adequately summarize the discussion we had in the [R.C.M.] 802 concerning the maximum punishment?

> ATC: Yes, Your Honor.

> MJ: You believe that a maximum 10 years['] confinement along with the dishonorable discharge, total forfeitures, and reduction to E-1 is the correct maximum punishment in this case?

> ATC: Yes, Your Honor.

MJ: Defense Counsel, anything to add to our discussion of the [R.C.M.] 802 and do you also believe that the dishonorable discharge, total forfeitures, and reduction to E-1 is the appropriate maximum punishment authorized in this case?

[Defense Counsel]: Nothing in addition to add, Your Honor, we agree and concur that at all points in time the [D]efense was on notice, and it was our understanding that 10 years was the maximum of confinement range for this offense. We concur.

MJ: [Appellant], the maximum punishment authorized by law in this case based solely on your guilty plea is a dishonorable discharge, total forfeitures of all pay and allowances, 10 years['] confinement, and a reduction to the grade of E-1. There is no minimum punishment in this case – – no minimum punishment that is required. Do you understand that?

[Appellant]: Yes, Your Honor.

MJ: Do you have any questions about the maximum punishment authorized by law as a result of your guilty plea?

[Appellant]: No, your [H]onor.

For the first time on appeal, Appellant claims the maximum confinement should be five years.

### 2. Law

"The maximum punishment authorized for an offense is a question of law, which [this court reviews] de novo." *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011) (citations omitted). We review a military judge's sentencing determination for abuse of discretion. *Id.* (citation omitted). "[W]here a military judge's decision was influenced by an erroneous view of the law, that decision constitutes an abuse of discretion." *Id.* (citation omitted).

When acting as the sentencing authority, a military judge must specify a term of confinement for each offense. Article 56(c)(2), UCMJ, 10 U.S.C. § 856(c)(2). "The punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense." Article 56(a), UCMJ, 10 U.S.C. § 856(a).

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Section 1324(A)(1)(a)(ii) of Title 8 of the United States Code carries a maximum term of five years in prison for each alien in respect to whom such a violation occurs. If the offense was accomplished for private

financial gain, Section 1324(B)(i) of this same Code authorizes a maximum ten-year sentence. *See* 8 U.S.C. §§ 1324(A)(1)(a)(ii), 1324(B)(i).

A plea of guilty may be improvident because it is predicated upon a substantial misunderstanding on the accused's part of the maximum punishment to which he is subject. *United States v. Walls*, 9 M.J. 88, 90–91 (C.M.A. 1980). However, the CAAF and its predecessor, the United States Court of Military Appeals, have not adopted a "mathematical formula" to resolve such an issue; rather, "all the circumstances presented by the record must be considered to determine whether misapprehension of the maximum imposable sentence affected the providence of guilty pleas." *Id.* In *Walls* "an error of 100 percent . . . was an insubstantial variation," citing to *United States v. Muir*, 7 M.J. 448 (C.M.A. 1979), because it was determined that the "appellant's misapprehension of the maximum imposable confinement was an insubstantial factor in his decision to plead guilty." *Id.* at 92.

In *United States v. Hemingway*, 36 M.J. 349, 353 (C.M.A. 1993), the court found an overstatement by the military judge of ten years as to the maximum confinement did not render the pleas improvident; instead, it held that the task of the court is to review all of facts and circumstances in determining whether misapprehension of maximum sentence affected the guilty plea. In *United States v. Poole*, 26 M.J. 272 (C.M.A. 1988), the court upheld the providence of the pleas where the military judge incorrectly advised the accused the maximum sentence included confinement for 21 years and a dishonorable discharge where the actual maximum sentence, however, included confinement for three-and-a-half years and a bad-conduct discharge.[18] In *United States v. Hunt*, 10 M.J. 222, 224 (C.M.A. 1981), the court found Hunt's guilty pleas provident where he pleaded guilty under the mistaken belief the maximum confinement

---

[18] In determining whether the misapprehension of the maximum sentence affected the guilty plea in *Poole*, the court observed the following circumstances: (1) there was no overreaching in the Government's charging scheme that could have spanned 87 specifications vice the six alleged; (2) that the appellant negotiated a pretrial agreement which exposed him to considerably less confinement than the maximum; (3) that the plea inquiry established the case against the appellant overwhelmingly and nothing in the record suggested that his pleas were other than provident; and (4) that the perspective of the appellate court should not be whether the appellant might now elect to stand trial after receiving a sentence "capped" by the court-martial's and the convening authority's actions, but rather whether there was a reasonable likelihood he would have rejected his plea bargain and demanded trial at the time he received the erroneous advice. 26 M.J. at 274.

that could be adjudged was 13 years, even though the correct maximum punishment was three-and-a-half years.[19]

### 3. Analysis

We do find the military judge erred by miscalculating the maximum confinement period. The five-year sentence enhancement provision of 8 U.S.C. § 1324(B)(i) if the offense was committed for private financial gain was neither properly pleaded nor proved. The Government concedes that pursuant to *Apprendi*, the Government could not have sought the sentence enhancement at trial.

However, we are convinced Appellant's guilty plea, as modified in our decretal paragraph, was provident despite the advice provided by the military judge. Our examination of the record leads us to conclude Appellant's guilty plea was not predicated upon a substantial misunderstanding of the maximum punishment as to render his guilty plea improvident. The quantum and quality evidence against Appellant was compelling and there is no indication he pleaded guilty though he believed himself innocent to avoid a crushing sentence. Appellant was apprehended by civilian law enforcement in the commission of the offense, who captured Appellant's arrest on dash and body camera footage. He confessed on the scene and again at the Dimmitt County Sheriff's Office to transporting his passengers for $1,500.00 per person.

According to affidavits submitted by Appellant's trial defense counsel, whether the statutory maximum was either five years or ten years had no bearing on their negotiations with the Government nor substantially affected Appellant's decision to plead guilty.[20] The Government never communicated to trial defense counsel a desire on the convening authority's part to seek a sentence in excess of one year; however, the Government did relay the convening

---

[19] In *United States v. Lewis*, 28 M.J. 871 (A.C.M.R. 1989), the United States Army Court of Military Review held an accused's plea was not improvident where he was told that the maximum punishment was 12 and not five-and-a-half years, but evidence of guilt was overwhelming and there was no reasonable likelihood that the appellant would have changed his plea.

[20] This court granted Appellee's motion to compel declarations from Appellant's trial defense counsel, Major ML and Captain JL, addressing Appellant's claims that they were ineffective in advising Appellant on the maximum punishment. Both trial defense counsel provided responsive declarations which are attached to the record and which we find we may consider to "resolv[e] issues raised by material in the record." *See United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020). We further conclude additional factfinding is not necessary on this issue as the parties' attachments are not materially in conflict, and we find we may resolve the issue based on the record before us. *United States v. Guinn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

authority would unlikely approve a plea agreement without some confinement minimum. These discussions followed the rejection of the Defense's alternative disposition proposal to plead guilty at a summary court-martial. Appellant's counsel ultimately negotiated a plea that provided for a period of confinement ranging from two to six months wherein the Government agreed to withdraw the conspiracy and firearm offenses. With respect to the degree of error, although five years is in fact one half of ten years, two to six months provided for in the plea agreement is a far cry from either.

While Appellant avers his plea was motivated by "having the opportunity to see part of his beloved daughter's remaining childhood versus missing it altogether," limiting punitive exposure as the principal purpose is true of virtually every plea agreement. The question is whether misapprehension of the maximum sentence impacted the guilty plea. While an explicit averment from an appellant that he or she would not have entered into a pretrial agreement if apprised of the correct maximum sentence is not required to render a plea improvident, in this case, neither Appellant or his trial defense counsel suggest their plea negotiations or ultimate agreement were in any way influenced by their misunderstanding.

We conclude dismissal of the additional serious offenses, with a sentencing range from two to six months of confinement was an adequate inducement for Appellant to plead guilty and any misapprehension of the maximum sentence was an insubstantial factor in his decision to plead guilty. Nor do we believe the convening authority would have been inclined to approve a negotiated plea agreement for less than two months, having conveyed reluctance to approve a plea agreement that included no confinement, and having denied an offer to submit the case to a summary court-martial. We are unable to conclude any misunderstanding as to the maximum confinement misled or induced Appellant into entering the plea agreement or his guilty pleas, particularly considering the explanation to Appellant at trial that he should plead guilty only if that was really the case.

### F. Ineffective Assistance of Counsel

Appellant argues the miscalculation as to the maximum sentence "renders what happened at trial unreliable and warrants correction." However, he makes no assertion he would have done anything differently or there exists a reasonable probability of a different result had he been advised otherwise. According to Appellant's trial defense counsel, Appellant was fully apprised of the strength of the Government's case, expressed no desire to litigate, and agreed that a negotiated plea agreement limiting exposure to confinement was in his best interest.

#### 1. Law

The Sixth Amendment[21] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence as stated in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citation omitted). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)).

We utilize the following three-part test to determine whether the presumption of competence has been overcome: (1) are the appellant's allegations true, and if so, "is there a reasonable explanation for counsel's actions;" (2) if the allegations are true, did trial defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers;" and (3) if trial defense counsel were deficient, is there "a reasonable probability that, absent the errors," there would have been a different result? *Id.* (alteration and omission in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted). "[C]ourts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689) (additional citation omitted). "Scrutiny of counsel's performance should be highly deferential." *United States v. Metz*, 84 M.J. 421, 428 (C.A.A.F. 2024) (citing *Strickland*, 466 U.S. at 689). We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *Mazza*, 67 M.J. at 475. With respect to prejudice, a "reasonable probability" of a different result is "a probability sufficient to undermine confidence in the outcome" of the trial. *Datavs*, 71 M.J. at 424 (quoting *Strickland*, 466 U.S. at 694) (additional citation omitted).

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*United States v. Scott*, 81 M.J. 79, 85 (C.A.A.F. 2021) (alteration in original) (quoting *Strickland*, 466 U.S. at 697) (additional citation omitted).

---

[21] U.S. CONST. amend. VI.

"The *Strickland* test applies in the context of [cases involving] guilty pleas." *United States v. Rose*, 71 M.J. 138, 143 (C.A.A.F. 2012). However, the prejudice inquiry "is modified to focus on whether the 'ineffective performance affected the outcome of the plea process.'" *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56–58 (1985)). That is, the appellant must establish prejudice by showing that there is a "reasonable probability that, but for counsel's errors, [the appellant] would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citation omitted); *see also United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (holding an appellant who alleges ineffective assistance of counsel "must surmount a very high hurdle," to include "satisfy[ing] the prejudice prong of *Strickland*" (citations omitted)).

"[W]here the accused has been grossly misled by a miscalculation or erroneous sentence estimation by defense counsel, such conduct may constitute [IAC]." *United States v. St. Blanc*, 70 M.J. 424, 428 (C.A.A.F. 2012) (internal citations omitted); *see also United States v. Marshall*, 45 M.J. 268, 273 (C.A.A.F. 1996) (holding an erroneous sentence estimation by defense counsel is not necessarily ineffective assistance of counsel); *United States v. Valmont*, 73 M.J. 923, 932 (A. Ct. Crim. App. 2014) (quoting *St. Blanc*).

### 2. Analysis

We have considered the totality of the circumstances, the presumption of competence, *Cronic*, 466 U.S. at 658, and the declarations of trial defense counsel as addressed *supra*. We find it unnecessary to determine whether counsel's advice as to the maximum sentence constituted constitutionally ineffective assistance of counsel, because, for many of the same reasons any misapprehension of the maximum sentence was an insubstantial factor in his decision to plead guilty, Appellant's ineffectiveness claim is also insufficient to satisfy the requirement of "prejudice" under *Strickland*.

As noted above, Appellant does not allege that had his trial defense counsel correctly informed him about the maximum sentence, he would have pleaded not guilty and insisted on going to trial. We do not believe he would have declined to enter this plea agreement limiting his sentencing to confinement from two to six months if he knew the maximum sentence was five rather than ten years. Dismissal of the additional offenses, with a sentencing range from two to six months of confinement was an adequate incentive for Appellant to plead guilty. We do not believe there was a reasonable probability that, but for

defense counsel misadvising on the maximum sentence, Appellant would not have pleaded guilty and would have insisted on going to trial.[22]

### III. CONCLUSION

The words "with knowledge of, or" are excepted from Specification 1 of Charge II, and the excepted words are **SET ASIDE**. The findings, as modified, are correct in law. Article 66(d), UCMJ, 10 U.S.C. § 866(d). *Manual for Courts-Martial, United States* (2024 ed.). We reassess the sentence to a bad-conduct discharge, three months' confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The sentence, as reassessed, is correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings, as modified, and sentence, as reassessed, are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[22] We take this opportunity to emphasize the primary responsibility for determining the legal limits of punishment rests upon the military judge. *United States v. Harden,* 1 M.J. 258, 259 (C.M.A. 1976).